UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHRISTOPHER YOUNG,<br><br>Defendant. | CRIMINAL NO. 25-mj-20 |

### GOVERNMENT'S MEMORANDUM IN SUPPORT OF
### PRETRIAL DETENTION OF DEFENDANT CHRISTOPHER YOUNG

On October 15, 2024, while communicating with an undercover police officer ("UC") in a private chat on a mobile social media application, the defendant sent the UC (who was located in the District of Columbia) a Mega[1] link that contained over 1,000 videos depicting children engaged in sexually explicit conduct with adults. Among the videos contained in the link sent by the defendant were videos of infants and prepubescent children being sexually abused by adults.

On January 30, 2024, the Defendant was charged by Criminal Complaint with one count of distribution of child pornography, in violation of Title 18, United States Code, Section 2252(a)(2). The Defendant was arrested on February 13, 2024, and made his initial appearance in the District of Columbia on the same day. The United States moved to detain the defendant pending trial and a detention hearing was set for February 19, 2025. The United States respectfully submits this memorandum in support of its motion seeking Defendant's detention pending trial pursuant to Title 18, United States Code, Sections 3142(f)(1)(A) (crime of violence). Because

---

[1] Mega is a cloud-based data storage service that allows its user to store files, including photo and video files, in their accounts and send links to others who can them click on the link to access these files.

Defendant poses an unmitigable risk to community safety, this Court should order that he remain detained pending trial.

## Factual Background

On October 4, 2024, a member of the Metropolitan Police Department-Federal Bureau of Investigation Child Exploitation and Human Trafficking Task Force ("CEHTTF"), operating in an undercover capacity ("UC") out of a satellite of office in the District of Columbia, received a private message on a mobile social messaging application from an individual using the screen name "to NASTY" who was later identified as the defendant, Christopher Young. Young sent the UC the following message, "Into yng, zoo, and family. Hmu on tele Mrnunyab." Based on the UC's training and experience, he understood the message from the defendant to mean that Young was interested in deviant sexual activities including sex with children (i.e. "yng"), animals (i.e. "zoo") and incest (i.e. "family"). The UC further understood the Defendant's message to be telling him to move the conversation to the mobile application Telegram at the handle "Mrnunyab."[2]

On October 7, 2024, the UC began chatting with the defendant on Telegram using the defendant's Mrnunyab handle. During the chat, the defendant again told the UC that he was interested in sexual activity with children, animals, and incest. The defendant told the UC that he was located in Baltimore and asked if the UC would like to exchange pictures. The UC sent the defendant a photo of his purported penis and Young sent the UC a photo of his erect penis. The UC told the defendant that he was sexually active with his purported six-year-old daughter, and Young responded, "nice you ever eat her pussy while you play with her, and she sleep?" The UC asked the defendant his favorite age range and the defendant responded, "7-17, but I enjoy

---

[2] "Hmu" refers to "hit me up" and "tele" refers to "Telegram."

watching any as long as it aint forced." The UC asked the defendant if he had any photos of children under the age of 10 and the defendant responded, "I have good one of all ages."

On October 15, 2024, the defendant sent the UC a Mega[3] link that contained over 1,000 videos depicting children engaged in sexually explicit conduct with adults. Among the videos contained in the link sent by the defendant were videos of infants and prepubescent children being sexually abused by adults. For example, one video contained in the Mega link depicted an infant boy being anally penetrated by the penis of an adult man. This particular video was known to the UC from previous investigations, and both the infant and adult in the video have been previously identified.

On October 15, 2024, an administrative subpoena was served on Telegram for information related to username "@Mrnunyab." The response from Telegram provided an associated phone number of 202-569-7XXX and an IP address of 73.191.72.245 which was used to access the Telegram account on October 28, 2024, while the UC was still in contact with Young. In response to legal process, Comcast provided subscriber information for the IP address 73.191.72.245 including the name Treyvond Davis and the address 1935 Whistler Ave, Baltimore, Maryland 21230. Open-source data base searches indicated that Christopher Young and Topher Young were also associated with that address.

The defendant continued to communicate with the UC on Telegram after sending the Mega link. On December 13, 2024, the UC discussed meeting with the defendant in person at the UC's purported residence on December 19, 2024. While discussing the potential meeting, the UC provided his cell phone number to the defendant and the defendant texted the UC from the cell

---

[3] Mega is a cloud-based data storage service that allows its user to store files, including photo and video files, in their accounts and send links to others who can them click on the link to access these files.

phone number (202) 569-7XXX (the same number that was associated with the telegram account @ Mrnunyab).   The UC asked Young to send him a picture of himself holding up his pinky and the defendant complied. The UC compared the photo that the defendant sent to him with a photo of the defendant that was taken from his South Carolina Driver's license.  (pictured below in Figure 1).

*Figure 1*



On December 13, 2024, an updated administrative subpoena was served on AT&T for phone number 202-569-7XXX.  A response received the same day listed the financially responsible party as Treyvond Davis of 5513 Old Court Rd, Windor Mill, Maryland.  The user of the account was listed as Christopher D. Young at the same address. The return also listed an associated email address of topherdyoung@gmail.com.  On January 13, 2024, an administrative subpoena was served on Google for gmail address topherdyoung@gmail.com. A response received the same day listed the subscriber as Christopher Young with a recovery SMS number of (202) 569-7XXX, the same number that the defendant used to text his photo to the UC in December 2024, and that was associated with the telegram account @Mrnunyab. The response from Google

further showed that the topherdyoung@gmail.com address was last accessed on January 10, 2025, from the IP address 73.191.72.245, which was the same IP address that the defendant had used to communicate with the UC on Telegram.

## Applicable Legal Standard

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [the defendant] as required and the safety of any other person and the community," the Court shall order the defendant held pending trial. 18 U.S.C. § 3142(e). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019). As a threshold matter, the government must demonstrate by clear and convincing evidence that the defendant is a danger to the community, *see* 18 U.S.C. § 3142(f).

In determining whether any condition or combinations of conditions will assure the safety of the community, in light of any applicable presumptions, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g).

Here, because Distribution of Child Pornography is a crime of violence involving a minor victim, "[s]ubject to rebuttal by the [defendant], it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(E). This presumption "operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (observing that the presumptions in § 3142(e)

"are rebutted when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released"). But even if the defense produces credible evidence, the presumption retains evidentiary weight and is considered by the Court among the Section 3142(g) factors. *See, e.g.*, *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) ("Even when a defendant satisfies his burden of production, however, 'the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court.' . . . The presumption remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001))); *United States v. Ali*, 793 F. Supp. 2d 386, 388 n. 2 (D.D.C. 2011) ("[C]ircuits that have considered the issue require using the presumption as a factor even after the defendant has produced credible evidence.").

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device. *See Smith*, 79 F.3d at 1210; *Williams*, 798 F. Supp. at 36.

## **Argument**

For reasons that follow, there are no conditions of release adequate to reasonably assure

community safety or Defendant's return to Court, and this Court should detain him pending trial.

### A. Nature and Circumstances of the Charged Offense

The defendant's alleged conduct in this case is extremely harmful and dangerous to the community. As detailed above, the nature and circumstances of the present offense make clear that this factor weighs heavily in favor of detention because Defendant's criminal conduct involves the sexual exploitation of the most vulnerable members of our community – very young children. "Child pornography depicts pictorial evidence of physical sex abuse against and exploitation of children and the production and distribution of such contraband carries a multitude of harms." *United States v. Galarza*, No. 18-MJ-146 (RMM), 2019 WL 2028710, at *6 (D.D.C. May 8, 2019) (Howell, C.J.) (reversing magistrate court's release order); *United States v. Nickelson*, No. 18-MJ-102 (GMH), 2018 WL 4964506 (D.D.C. Oct. 15, 2018) (Howell, C.J.) (same); *United States v. Blanchard*, No. 18-MJ-101 (GMH), 2018 WL 4964505, at *4 (D.D.C. Oct. 15, 2018) (Howell, C.J.) (same). Children captured in images and videos depicting their sexual abuse are significantly harmed at the time that the images and videos are created, and they are re-victimized and re-traumatized every time an individual, like Defendant, views and shares these images for his own sexual gratification and for the sexual gratification of others. *See Galarza*, 2019 WL 2028710, at *6 (noting that "'the perpetual nature of child pornography distribution on the Internet causes significant additional harm to victims,' [who] 'live with persistent concern over who has seen images of their sexual abuse' and how those images are being used to cause additional harm.'" (quoting U.S. SENT'G COMM'N, FEDERAL CHILD PORNOGRAPHY OFFENSES (Dec. 2012) at vii); *Nickelson*, 2018 WL 4964506, at *4 (same); *Blanchard*, 2018 WL 4964505, at *4 (same).

The seriousness of the offense is also reflected by Congress's judgment that those charged with distributing child pornography should be presumed detained pending trial, *see* 18 U.S.C.

§ 3142(e)(3)(E), and are subject to a five-year mandatory minimum term of imprisonment upon conviction, *see* 18 U.S.C. § 2252(b)(1).

Defendant's conduct in this case was particularly egregious in that it involved the distribution of a link containing over 1,000 videos depicting the sexual abuse of children as young as infants. Indeed, the Sentencing Guidelines recognize the serious nature of the offense that Defendant is charged with, which include offense-level enhancements for material involving a prepubescent minor, *see* USSG §2G2.2(b)(2), and material that portrays sadistic or masochistic conduct or sexual exploitation of an infant or toddler, *see* USSG §2G2.2(b)(4). In addition, the Guidelines provide an additional enhancement for the distribution of more than 600 images of child sexual abuse material, se USSC §2G2.2(b)(7). The Guidelines provide additional enhancements for engaging in the knowing distribution of such material, *see* USSG §2G2.2(b)(3)(F), and for using a computer or interactive computer service to do so, *see* USSG §2G2.2(b)(6). Based on the evidence available at this early stage of the case, the United States estimates Defendant's total Offense Level under the Guidelines to be at least 37, yielding an estimated Guidelines range of 210-262 months imprisonment, which further reflects the very serious nature of the offense conduct.[4] Accordingly, the nature and circumstances of Defendant's offense weigh heavily in favor of detention.

### B. The Weight of the Evidence Against the Defendant

The second factor to be considered, the weight of the evidence, also weighs heavily in favor of detention. The evidence against Defendant in this case is extremely strong. As detailed above, Defendant discussed his sexual interest in children with an undercover law enforcement agent and

---

[4] The mandatory-minimum term of imprisonment and lengthy Guidelines range provide incentive for Defendant—who has never previously served a term of imprisonment—to flee prosecution.

then purposefully distributed a link containing a staggering amount of child sexual abuse material to the UC. Although the defendant distributed the material using an encrypted messaging application, he provided his Telegram handle to the UC, and he texted the UC directly from his cellular phone. The government's investigation determined that the telegram account that the defendant used to distribute the child sexual abuse material, was linked to the same phone number that the defendant used to text the UC in later conversations.

While some judges in this Court have indicated that this factor should be given less weight, in *United States Blackson*, following a thorough review of the text of Section 3142 and decisions analyzing this factor, then–Chief Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." No. 23-CR-25 (BAH), 2023 WL 1778194, at *8 (D.D.C. Feb. 6, 2023) (Howell, J.). Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed then–Chief Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149–150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang*; this factor should be given no less weight than any other factor.

Indeed, "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 WL 1778194, at *10. This is such a case, and Defendant should be detained pending trial.

### C. The History and Characteristics of the Defendant

Here, the defendant has admitted to the undercover officer in this case that he has a sexual interest in children, and he has clearly amassed a very large collection of child sexual abuse material. The Mega link distributed by the defendant contained over 1,000 images of children as young as toddlers being raped and sexually abused. Furthermore, the defendant told the UC that he had "good" images of children "of all ages" being sexually abused. Thus, the defendant's statements and actions in this case demonstrate that he has been engaged in the trade of child sexual abuse material for a significant period of time, in order to amass such a large collection of material. In addition to the defendant's distribution of child sexual abuse material in this case, the defendant also engaged in the UC in conversation about the sexual abuse of the UC's purported child, asking the UC if he had sexually abused the purported child while she slept. The defendant's conversation with the UC demonstrates a dangerous willingness to engage with other like-minded individuals in a manner that normalizes child sexual abuse and may increase the risk that real children in the community will suffer sexual abuse.

This factor also weighs in favor of detention.

### D. The Nature and Seriousness of the Danger to any Person or the Community

The facts and evidence in this case establish that Defendant poses a grave danger to the community. As discussed above, the distribution of child pornography results in severe mental, emotional, and physical trauma to the children who are victimized by offenders such as Defendant, who seek to achieve sexual gratification through viewing and sharing of images depicting the sexual abuse of children. Defendant, as a consumer and trafficker of child pornography, furthers the demand for new material depicting the graphic sexual exploitation and sexual abuse of vulnerable children. It is precisely "[t]hese significant harms and dangers [that] animated the

Congress to create the statutory presumption of detention in these cases." *Galarza*, 2019 WL 2028710, at *7; *Nickelson*, 2018 WL 4964506, at *5 (noting also Congress's creation of significant statutory mandatory minimum penalties); *Blanchard*, 2018 WL 4964505, at *4 (same).

As described above, Defendant here has not only engaged in the distribution of sadistic child pornography depicting the forcible anal rape of an infant but has also sought out others who share his sexual interest in children. According to Defendant's statements to the UC, he has a sexual interest in children and by advertising that on social media applications, he is seeking out other people who share this interest so that he can share not only this interest with others but also exchange extremely harmful child sexual abuse material with others.

Defendant did not give a second thought to sharing hardcore child pornography with an undercover police officer on Telegram, within days of their first communication. He knew his conduct was illegal and committed the instant offense using an encrypted application. Moreover, the staggering volume of child sexual abuse material that the defendant shared with the UC, demonstrates his deep involvement in the child sexual exploitation community. The totality of his conduct and personal circumstances demonstrates that he is an unmitigable danger to the community. There is no condition or combination of conditions that could reasonably assure community safety if the defendant were to be released. This Court should detain him pending trial.

## Conclusion

For the foregoing reasons, the government respectfully requests that this Court order that Defendant Christopher Young remain detained pending trial.

Respectfully submitted,

EDWARD J. MARTIN, Jr.
United States Attorney

                                        D.C. Bar No. 481866

Dated: February 18, 2025        By:     /s/ *Karen L. Shinskie*
                                                    Karen L. Shinskie
                                                    D.C. Bar No. 1023004
                                                    Assistant United States Attorney
                                                    United States Attorney's Office for the
                                                    District of Columbia
                                                    601 D Street, N.W.
                                                    Washington, D.C. 20530
                                                    (202) 730-6878
                                                    Karen.Shinskie@usdoj.gov